(No. 13935.—Decree affirmed.)

D. DeWITT PLANK et al. Plaintiffs in Error, vs. FRANK PLANK et al. Defendants in Error.

*Opinion filed April 19, 1922—Rehearing denied June 9, 1922.*

1. BILLS OF REVIEW—*what neces. ary to set aside decree on the ground of fraud.* To maintain a bill of review to open up a decree on the ground of fraud the allegations and proof of fraud must be clear and conclusive, as a decree will not be set aside except for strong and satisfactory reasons, and it must be alleged and proved that the fraudulent acts complained of operated to procure the decree sought to be opened up.

2. SAME—*false testimony is not sufficient, of itself, to warrant opening up a decree.* The fact that false testimony was heard in the original proceeding is not, of itself, sufficient to warrant opening a decree on the ground of fraud, but the fraud alleged and proved must be in the procuring of the decree itself.

3. SAME—*when alleged false testimony cannot be said to be a fraud upon the court.* Testimony that a grantor was of sound mind when he entered into a stipulation for a family settlement cannot be said to be a fraud upon the court, which entered a decree pursuant to the stipulation, where the evidence in the proceeding to open up the decree is conflicting on the question of the mental capacity of the grantor, and in the absence of positive proof of a conspiracy to defraud the court such testimony does not justify setting aside the decree by a bill of review.

4. SOLICITORS' FEES—*when defendant, on review of decree dismissing bill of review, cannot complain of judgment for solicitors' fees.* On writ of error to reverse a decree dismissing a bill of review, a defendant, by assigning cross-errors, cannot complain of a judgment against him for solicitors' fees rendered when the decree which the bill seeks to review was entered; where there is no evidence that fraud was practiced on the court in procuring the allowance of the fee, but such question should be raised on appeal or writ of error in the original proceeding.

WRIT OF ERROR to the Circuit Court of DeKalb county; the Hon. C. F. IRWIN, Judge, presiding.

WILLARD M. McEWEN, HENRY W. PRENTICE, and HARRY W. McEWEN, for plaintiffs in error.

FRANK E. WETMORE, for defendant in error Bert R. Plank.

C. D. ROGERS, and A. G. KENNEDY, for other defendants in error.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This cause comes to this court on writ of error to review a decree entered on April 22, 1919, by the circuit court of DeKalb county in four certain cases therein consolidated. Two of these cases were filed by plaintiff in error D. DeWitt Plank and are bills in the nature of bills of review, seeking to set aside two certain decrees entered on the 28th day of April, 1914, one in a case brought by defendant in error Frank Plank against his father, William W. Plank, and the other brought by defendant in error Bert R. Plank against his father, William W. Plank. These cases were bills for injunction, seeking to restrain William W. Plank from taking from F. O. Crego, and to enjoin Crego from surrendering, certain deeds deposited in escrow with Crego by William W. Plank. The grantees named in these deeds were Frank and Bert R. Plank, respectively. The other two cases consolidated consisted of a bill to set aside the will of William W. Plank, now deceased, filed by Fay Plank, and an appeal taken by D. DeWitt Plank from an order of the probate court probating the will of William W. Plank, executed November 18, 1912. The circuit court dismissed the bills in the nature of bills of review for want of equity. By the same decree it dismissed the bill to contest the will for want of equity, and also ordered the probate of the will.

The decrees in the cases of Bert R. and Frank Plank against William W. Plank were entered on hearing in those cases, and in conformity with a stipulation of all parties interested in the subject matter thereof, as a settlement of their disputes and differences regarding the same. This

stipulation was executed April 21, 1914. By the stipulation and the decree entered in each of those cases immediate delivery of the deeds held in escrow was made to Bert R. and Frank Plank, and certain transfers were made to Mary Wheeler, a daughter of William W. Plank. The stipulation recites that William W. Plank desires to settle his affairs among his children. It also provides for his maintenance by them during his life, and sets out that he expects to make a will by which the balance of his estate shall go to those of his heirs not parties to the stipulation.

The decree here sought to be reviewed in the case of Bert R. Plank against William W. Plank and others, recites that upon the bill and answer and on oral and documentary proofs the court finds that the complainant therein, Bert R. Plank, was of the age of forty-nine years, a son of William W. Plank; that until about three years prior to the commencement of that suit he had resided with his father and worked for him upon his different farms with no fixed reward or compensation; that during that time his father acquired several hundred acres of farm land and had made gifts of real estate and personal property to other of his children,—to DeWitt Plank, Marcus E. Plank and Mary Wheeler, William Plank, then deceased, and his grandchildren, Fay Plank and Helen Hess, children of William Plank. The decree further finds that on March 4, 1904, William W. Plank, with the purpose of making final settlement and disposition of his property matters, executed a will and certain deeds, which deeds were to be held in escrow, making disposition of all the property owned by him; that the deeds were placed in the hands of T. A. Luney, who thereafter died, and the deeds were then placed in the hands of Floyd O. Crego; that one of these deeds of conveyance was made to testator's son Bert, one to his son Frank and one to his son Marcus. The decree also finds that William W. Plank did not reserve the right to recall or revoke any of the deeds placed in escrow; that on or about the first of June,

1912, William W. Plank made demand upon Crego to surrender and deliver up the deeds to him; that Bert R. Plank brought proceedings to restrain William W. Plank from taking the deeds; that on the 5th of August, 1913, William W. Plank deeded to his daughter, Mary Wheeler, the Root farm, in DeKalb county, being the same lands described in the deed held in escrow by Crego in which Bert R. Plank was grantee; that on the 21st of April, 1914, the stipulation herein referred to was made; that the aggregate value of the property involved in that suit and the one of Frank Plank against William W. Plank, together with the other property of William W. Plank referred to in the stipulation, was upwards of $200,000, in which Bert R. Plank had an interest of $50,000. The decree allowed fees to counsel for Bert R. Plank in the sum of $3000; ordered that Mary Wheeler and her husband convey by proper deeds to Bert R. Plank the farm known as the Root farm, for which the deed to Bert was held by Crego in escrow, and that Crego be directed to deliver up to Bert R. Plank the deed of conveyance held by him in escrow, in pursuance of the stipulation.

In the case of Frank Plank against William W. Plank the decree recites practically the same findings as to the relations of the parties, setting out that Frank Plank was of the age of fifty-five years; that he had resided at home with his father for a period of about thirty-four years after he attained his majority and worked for his father without a fixed compensation; that the deeds to him made and placed in the hands of Luney, and later in the hands of Crego, were made in accordance with a settlement by William W. Plank of his property interests among his children. After setting out the terms of the stipulation and agreement it was ordered that Crego surrender and deliver up the deeds of conveyance held by him for Frank Plank in pursuance of the stipulation; that title to the lands therein described be in Frank Plank; that Frank Plank convey to

303—17

Mary Wheeler a farm of 320 acres in Oceana county, in the State of Michigan, which he held in his name, and ordered that William W. Plank execute deeds to Mary Wheeler for certain property in DeKalb county and the city of DeKalb in accordance with the stipulation, and assign over to Frank Plank certain mortgages held by William W. Plank.

These decrees were, as we have seen, entered on the 28th day of April, 1914. The bill in this case to review them was filed in October of that year. The ground upon which it is sought to open up the decrees entered on April 28, 1914, is, that the same were procured by fraud upon the court. It is conceded that whether or not a fraud was committed in procuring the decrees sought to be set aside depends upon whether or not William W. Plank was of unsound mind at the time the stipulation in settlement was entered into, and whether the witnesses who testified that he was of sound mind knew, when so testifying, that the contrary was true but kept the truth from the chancellor, and it is admitted that the decrees entered under the stipulation should not be set aside if plaintiffs in error have not shown such unsoundness of mind and knowledge thereof on the part of the witnesses testifying in the proceedings in which the decrees were entered. They are therefore the controlling questions on this phase of the case.

The will which is attacked in one of these cases consolidated was made on November 18, 1912. A jury was waived by the agreement to consolidate. The basis of the attack in that case was that the testator was of unsound mind. The question, therefore, of first importance in these cases is the soundness of mind of William W. Plank on November 18, 1912, and on April 21, 1914, when he signed the stipulation in question. To maintain a bill of review to open up a decree on the ground of fraud, charges and proof of fraud must be clear and conclusive. (*Harrigan* v. *County of Peoria,* 262 Ill. 36; *Miller* v. *Rowan,* 251 id.

344.) A decree once entered in a court of record will not be set aside except for strong and satisfactory reasons. It must not only be charged, but the evidence must show, that the fraudulent acts complained of operated to procure the decree sought to be opened up. The fact that false testimony was heard in the original hearing is not, of itself, sufficient to warrant opening a decree. The fraud alleged and proven must be in the procuring of the decree itself, before a court of equity will open up the same. (*Boyden* v. *Reed,* 55 Ill. 458; *Rae* v. *Hulbert,* 17 id. 572; *United States* v. *Throckmorton,* 98 U. S. 61.) The fraud alleged here is that witnesses knowing that the testator, William W. Plank, was of unsound mind nevertheless deceived the court and kept those facts from it, and thereby procured the entry of this decree.

Much testimony was introduced, as is usually done in cases where the mental competency of a grantor or testator is involved. It would serve no good purpose to go into a detailed analysis of the testimony of these witnesses, and to do so would extend this opinion far beyond reasonable limits. Plaintiffs in error offered forty-four witnesses and the defendants in error thirty-five, most of whom testified concerning the soundness of mind of William W. Plank. More than 300 exhibits were offered in evidence, the majority of which were offered as evidence of business transactions of the testator. Many of plaintiffs in error's witnesses testified that they considered William W. Plank to be of unsound mind at the time of the making of the will, in November, 1912, and also at the time of the making of the stipulation attacked here, in April, 1914, while those offered by defendants in error were of the opinion he was then of sound mind. The testimony upon both sides of this lawsuit, however, discloses that William W. Plank did transact business for himself up to a short time before his death, which occurred in July, 1914. It appears that at the time of his death he was approximately ninety-one years

of age; that during his life he ccumulated a large amount of real estate in this State and i ι Michigan; that on March 24, 1904, he executed and del vered in escrow the deeds which were the subjects of th( suits filed against him in 1912 by Frank Plank and in 1913 by Bert R. Plank, seeking to enjoin his recovery of t e possession of the deeds. Numerous witnesses testified to :he peculiarities of William W. Plank, covering a period fr m 1891 up to the time of his death, from which peculiar ties they gave the opinion that he was not able to transa t business. On the other hand, a large number testified 1ɔ certain business transactions or a long acquaintance wi h him, and gave the opinion that he was of sound mind.

The basis of the fraud allege d here is, as we have seen, the charge on the part of plain iffs in error that the witnesses who testified in the suits s ɔught to be reviewed knew that William W. Plank was not of sufficiently sound mind to understand the nature of the stipulation he was signing and that he was incapable of tr ιnsacting business. Without reviewing in detail the testi ιony offered on both sides as to the mental condition of V ʾilliam W. Plank prior to the date of the making of the s ipulation in question, it is sufficient to say that there is su :h a conflict of testimony concerning his mental condition that it could not be said that the witnesses who testified ( n the hearings at the time of the entry of the decrees attac ɟed by this bill knew that William W. Plank was *non co npos mentis* or could not honestly have been of the opin on that he was mentally competent to transact business. Unless the evidence discloses clearly that they knew, or should have known, that he was *non compos* and that tɦ ere was no room for an honest opinion to the contrary, it cannot be said, in the absence of positive proof amountin ʄ to proof of a conspiracy to defraud the court, that a decr ɟe can be set aside on the ground that such testimony was a fraud upon the court. The stipulation was signed by ʾVilliam W. Plank in the

presence of Mary Wheeler, his daughter, Leonard Wheeler, her son, Julius E. Matteson and John A. Dowdall, solicitors for William W. Plank and Mary Wheeler. The evidence shows that the stipulation was prepared at a conference in which these parties and Thomas M. Cliffe and Zachariah Wheeler, the husband of Mary Wheeler, were present, as were defendants in error herein and their counsel. The record shows that almost an entire day was spent in the discussion and settlement of the matters set out in the stipulation, that William W. Plank was advised by his attorneys, and that when the stipulation was signed it was satisfactory to all parties in interest. While Mary Wheeler, the daughter, on the hearing in this cause testified that she told her father, after he signed the stipulation, that the settlement was not satisfactory to her, and testified that he did not have sufficient mental capacity to understand the stipulation at the time he signed it, it appears from the record that under the stipulation she received property amounting to approximately $30,000, and she raised no question at the time of the signing of the stipulation as to the mental capacity of William W. Plank. There is no charge and no evidence of an arrangement between those making the stipulation to procure the benefits of a decree thereon by deceiving the court. The charge is that a fraud was practiced on William W. Plank by the defendants in error and counsel for William W. Plank to get his signature to the stipulation and on the court by the witnesses who testified. These were Julius E. Matteson, counsel for William W. Plank, John M. Carpenter and C. D. Rogers. Of these, Matteson testified on the hearing before the chancellor. They are men of high standing and reputation for integrity. Undue influence is not charged in the matter of the signature to the stipulation and the record contains no proof of the same.

On a review of the evidence as to what occurred at the time of the signing of the stipulation, we are forced to

the conclusion that when witnesses testified that they considered William W. Plank to have been of sound mind at the time of the signing of the stipulation and also at the time of the making of the deeds in question, it cannot be said that they then knew that he was mentally incompetent to transact business or that their opinion as to his soundness of mind was not honestly held and given. The stipulation in this case, by giving the deeds put in escrow to the grantees immediately rather than upon the death of William W. Plank, carried out only that which the stipulation recognized was to be carried out on his death. The settlement was not confined entirely to the property described in the deeds put in escrow. It included also certain property taken in the name of Frank Plank which William W. Plank contended belonged to him. By the stipulation Frank Plank was required to deed this property to the daughter, Mary Wheeler. It also provided that other property was to go by will to his other heirs.

The testimony offered in support of the bills in the nature of bills of review in this case does not make the clear showing required in order to justify opening up the decrees, and the chancellor did not err in so holding. Nor can we say on a review of the testimony in the record that the chancellor erred in holding that the will made by William W. Plank in November, 1912, as a valid will. The testimony in the record as offered for the most part applied to all of the cases consolidated. The evidence of the contestants on this point tends to show that the will was not read over by the testator before he signed it; that he was eighty-nine years of age, feeble physically and mentally. The testimony of the proponents shows that at his request the will was drawn by John A. Dowdall and Julius E. Matteson, who witnessed it, and both of whom testified as to the mental capacity to make the will. On consideration of all the testimony concerning the mental competency of William W. Plank, we are of the opinion that we would not

be justified on this record in reversing the holding of the chancellor that he was mentally competent to make a will at the time the same was executed by him. It follows that it was not error, therefore, to order probate of the will of November 18, 1912.

Defendant in error Bert R. Plank seeks by assignment of cross-errors to be relieved in this proceeding from a judgment for solicitors' fees amounting to $3000, entered against him at the time the decree was entered disposing of his suit against William W. Plank. He contends that the same was allowed against him when he was not in court and without his knowledge or consent. The record discloses concerning the matter of fees that counsel in whose behalf judgment for the fees was entered wrote Bert R. Plank at the time the bill to restrain his father from obtaining possession of the deed to him in escrow was filed, saying that their fees would be one-fifth of the amount recovered by them in the proceedings, contingent upon such recovery. The record also discloses a letter from him to Kennedy & Rogers, his counsel, saying that he thought their fee was pretty high but that he did not want to try to induce a reduction, or words to that effect, but he did not intimate in that letter that he would not pay the fee suggested by his counsel. The record shows that he secured in the final adjustment of the matter property amounting to over $30,000, and that the fee assessed in this case and provided for in the decree is about one-half of the one-fifth which counsel demanded and which he did not refuse. Moreover, there is no evidence whatever that fraud was practiced on the court in procuring by the decree the allowance of the fee in question. Had Bert R. Plank desired a review of such decree it should have been had by a direct proceeding on appeal or writ of error.

The record in this case contains no reversible error, and the decree will therefore be affirmed. *Decree affirmed.*